Bentley, J.
Plaintiff, in his petition, alleges that he is the owner of the southwest thirty-two and one-hálf feet of lot 458, Port Lawrence division, of the city of Toledo, Lucas county, Ohio, which is a lot lying between Jefferson and Madison streets, having a frontage on Huron street, in this city. He gives a description of it, and avers that he has been the owner of it in fee simple since January 31, 1876, and says:
“Said lot extends back a uniform width to a depth of 120 feet to an alley of the width of about sixteen feet; that said alley extends from Jefferson street in said city a uniform width towards Madison street through the center of the block bounded by Jefferson, Huron, Madison and Erie streets in said city.”
He further says that it has been dedicated to the public use,and that it has been open and used as a public highway and by all the owners of lots abutting thereon more than twenty-one years. He says also that he bought said property upon the faith and with the understanding that the alley had been permanently dedicated to public uses, and been used by the public generally. .
He further states that he is interested in keeping said alley open as a means of access to the rear end of his said lot and for the accommodation of the public. He avers also in his petition that said alley has-been accepted as a public highway and treated as suchjby the^city authorities during all the times mentioned, and he then jroceeds to state that the defendant, who is the owner of lot 456 and part of 457 —lot 456 fronting on Huron street and abutting on Jefferson street — has proceeded to erect an obstruction across the alley, or a portion thereof, in order to prevent the plaintiff and the public generally from passing alone the alley, and that by reason thereof they are hindered and delayed in doing so; that(he has sustained injury; that he has no remedy at law,and he prays that defendant may be ordered to abate *248 the nuisance and be enjoined from erecting,any nuisance, and from interfering with the passage of the plaintiff and the public along said alley.
Defendant files an answer, in which he denies each and all of the allegations in the petition contained.
The case was submitted to us upon written briefs and upon evidence that lies in statements and agreed statements, in the depositions of parties, and in sundry and divers documentary evidence. The briefs are very full, and embrace a great many cases, and we have endeavored to give them very full consideration.
The facts, in general, are substantially these: Williard W. Howe, in 1853, became the purchaser of lot No. 456, and proceeded during that summer to erect upon it a residence, completed in 1854, when he entered into occupation of it, and it remained his place of residence and that of his family, until a year or two ago. In 1857 — I think it was —be purchased the adjoining lot, No. 457, but having prior to that time erected upon the rear end and upon the line of the lot, of his lot 456, a barn, he moved the barn and swung it around, as he says, so that it stood when be had adjusted it, in part upon lot 458 and in part upon lot 457, and upon a line eight feet from the rear end of the line of his lots. His testimony has been taken (by deposition),and he states therein that he did this for the purpose of enabling him to reach the barn himself more conveniently, and for the convenience of nis tenants. He has also erected sheds in connection with the barn, and some outbuildings, and leased them to the United States Express Co. who have occupied it for some years; that that building was placed in the situation it was in for the more convenient use of himself and of those tenants — -the Express Company, their horses, wagons, etc. He further says, by his testimony (of himself and his son), that Jefferson street since that time has been filled up and that a sidewalk has been constructed *249 along up Jefferson street the whole length of his lot, and an eight-foot stone sidewalk, which was completed a few years ago, and for which he was assessed the whole depth of his lot; that the sidewalk was uniform in width to its end, and that afterwards a change was made in its form by reason of this supposed alley.
His son testifies that by reason of the walks going along this alley they were injured by it, and for that reason they proceeded to erect the obstruction complained of, and not •from any malicious intention.
It is shown also that the assessments made from time to time by the city authorities for the improvement of Jefferson street have been levied upon the property to the full depth of the lot.
It appears by the testimony of plaintiff that he became the owner of the lot upon which he resides in the summer of 1883, which is described as the south thirty-two and a half feet of lot 458, and says: “My lot fronts on Huron street and runs back a uniform width of thirty-two and a half feet to the alley, which is about sixteen feet wide. Eight feet of this alley belongs to my lot. In taking my deed the lot was described as running back to the rear end of said lot, because I considered it necessary to so describe it in order to give me the benefit of the eight feet in case the alley should be ever vacated for any reason;” and he states that within the last three years he has erected upon the rear end of his lot and upon a line eight feet back from the rear end of the lot a brick — I think it is — barn, costing about $1,000; that at the time he purchased the lot he relied upon the fact that there was, as he supposed, a public alley there,and that he was told by sundry persons that there was a public alley there, but he was never told so by W W. Howe or by any of the defendants. The testimony of some other parties was taken showing that he bought the lots supposing that there was an alley there, and that one of them built a barn in the situation that I have stated.
*250 It further appears that originally as they had used the alley they had been in the habit of coming through to Madison street; but sometime, as I understand it, about the year 1876, the supposed alley adjoining Madison street was closed up by Dennis Coglin — who owned property there to the depth of 100 feet; and by the joint action of himself and the heirs of the Walbridge estate, who,some years ago, built a brick block adjoining his property, and from that day there never has been any passage-way through there, and that the same has remained closed, and that the residue of the supposed alley is simply a pocket extending from Jefferson street down to the line of his lot.
In 1875 a resolution was passed by the common council of the city of Toledo to open that alley to the width of sixteen feet; and, in 1876, the council rescinded that resolution and passed a resolution to open it to the width of fourteen feet, and such proceedings were had, amounts were awarded to the respective owners for the value of their property, and that the city failed to pay within the time required, requiring the parties to take certificates, which they refused to do, and thereupon the city refused to advance the money, and the proceedings were dropped.
It further appears that in 1866, Richard Mott, being the owner of lot 455, which is a lot fronting on Jefferson street and adjoining this alleged alley, made a dedication of the alley eight feet in width adjoining or off of the lot, and extending across the rear end of that lot and some other property that he owned out to Erie street, which still remains, as we understand it, a public alley.
This, I believe, covers all the substantial facts that appear in the evidence.
It will be seen by the statement of facts that there never was any dedication, in the manner provided by the statute —mo deed or plat was made of the real estate as required, and that whatever dedication there was, was a common law dedication — If there be one.
*251 It further appears — as I have cited already — 'that the 'plaintiff, in purchasing his lot, never made any inquiry of W. W. Howe, or of any person claiming to be the owner of these lots, as to whether there was an alley there or not, and the question for us to determine is, whether, under the ■facts of the case, there is evidence sufficient to constitute a common law dedication which will be available to this plaintiff.
A statement of some of the characteristics of a common law dedication has been made in the case of Lessees of Incorporated Village of Fulton v. Mehrenfeld, 8 Ohio St., 440, and it is there stated that dedications of landin general -operate by way of estoppel, and not as grants or transfers of -an interest. It is further held that a statutory dedication is in the nature of a grant; that the estate is vested by way -of a grant, and not by way of estoppel. On page 446, the court further state, that:
“To constitute a binding dedication of ground to public uses at common law, there must have been an intention to ■dedicate, and an actual dedication on the part of the owner, and an acceptance on the part of the public, which may be 'proved by the circumstances of the case,”
I should say, in passing, that that is put in that form in regard to the pleadings, because this particular action was brought in ejectment by the village of Fulton against certain parties, to obtain possession of the street. And it is expressly stated in this decision that there may be extended to the owners of the abutting property a right on the part of abutting property to restrain persons from closing a ■street — 'When the city would have no right in the street. I may say, in passing, that there is no evidence that the common council has in any manner recognized this alley as a public higwhay. They have never improved it. Indeed,it would seem that in 1875, they then recognized it so far as they could, as belonging to the property owners, be *252 cause they passed a resolution to condemn it fo‘r the purpose of an alley.
It is then as between this plaintiff and the defendants,, that we shall discuss the case.
It is said in 8 Meeson & Wellsby, that the use of it by the public is simply evidence of the fact of dedication, and evidence only; and they further say that any act on the part of the owner of'the property showing that he had not intended to dedicate it, is of far more importance as a matter of evidence than the fact that the public have been allowed to pass along it.
In regard to the statement made in the testimony of Mr. Howe, how far there was any secret intention on his part to dedicate, we need not inquire. Objection is taken to-some of his evidence in respect to statements as to the purposes for which he moved his barn back and left the right of way open. We think, however, that the facts sufficiently appear by his evidence that at the time he moved his barn back and placed the foundations along adjoining the line of' the barn — -eight feet from the rear end of his lot, that he did it for the purposes as he states in his deposition, to-wit, for the purpose of enabling himself and his tenants to-reach the barn and to use it- — -the Express Company for the purpose of storing its wagons and keeping its horses and giving them an opportunity to pass in and out of Jefferson street to the barn.
We are of the opinion that, under the testimony in this case, there is nothing in the acts of Mr. Howe that shows that he ever intended to dedicate this property to the use of the public — that he intended to give it to the public; we think everything that was done by him is consistent with his statements in regard to the facts of the case at the time, to-wit, that he was simply opening that for his own private use and that of his tenants. It is true that he permitted persons to pass along the street from time to time, and it is *253 further true that he never made any public objections, save in one or two instances where persons were using the street in such a manner as that it became a nuisance in there by allowing cattle to run in and out there, and perhaps some poultry, and allowed cattle to stay there and turned them into his lot. Neither did ha do anything, save and except that he left the road open, and induced any of these parties who were making purchases to believe that he had dedicated that property to the use of the public, and, before there should be an estoppel decreed against him, or before he should have been held to have lost his property, it is very clear that there should be such acts of dedication as to show that at the time the street was opened upon his part he had a clear intent to dedicate it to the use of the public for all time to come. We do not think that has been made out, and, in view of the principles to which 1 have referred we hold that he has done nothing to estop himself from claiming the right to put his fence out to the limits of the lots, and the decree for injunction will therefore be refused.